**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **AUXO MEDICAL, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No. 3:11cv259-DWD** |
| ) | |
| **OHIO NATIONAL LIFE ASSURANCE** ) | |
| **CORPORATION,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

This matter is before the Court by consent of the parties pursuant to 28 U.S.C. §

636(c)(1) on the parties' cross motions for summary judgment (ECF Nos. 28, 32) and the

Defendant's Supplemental Motion for Summary Judgment (ECF No. 49).  The matter has been

thoroughly addressed  by the parties' submissions, including supplemental materials filed by

both the Plaintiff (ECF No. 46) and the Defendant (ECF No. 44).  The Court has reviewed the

extensive record in the matter and entertained oral argument on the motions.  For the reasons that

follow, the Plaintiff's Motion for Summary Judgment (ECF No. 28) shall be DENIED, the

Defendant's Motion for Summary Judgment (ECF No. 32) shall be GRANTED, and the

Defendant's Supplemental Motion for Summary Judgment (ECF No. 49) shall be DENIED AS

MOOT.

## I. BACKGROUND

The Court has reviewed each party's statement of undisputed facts, including the

extensive supporting documentation filed in support of the respective positions.  Withholding

discussion of disputed material facts to be treated separately as to each motion, *infra*, as required

where the parties have submitted cross-motions for summary judgment, see Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (citations omitted),  the Court has concluded that the following narrative represents the facts for purposes of resolving the cross-motions for summary judgment.[1]

On May 12, 2004, Ohio National Life Assurance Corporation ("Ohio National" or the "Defendant") issued a "key man"[2] life insurance policy (the "Policy") to Auxo Medical, LLC ("Auxo Medical" or the "Plaintiff"), insuring the life of its Vice President of Service Operations, Kevin J. Smith ("Smith").  (Aff. of Karen Losher ("Losher Aff.") at ¶¶ 3-4, ECF No. 33-2.) Auxo Medical continued to make payments on the policy for some time after Smith's resignation from his position with the company on October 22, 2007.  (Def.'s Mot. Sum. J. ("Def.'s Mot.") at Ex. 5, ECF No. 33-12.)  After ceasing payments on April 15, 2008, Auxo Medical requested a policy illustration based upon "zero additional premium" payments.  (Def.'s Mot. at Exs. 8, 12, ECF Nos. 33-15, 33-19; Losher Aff. at ¶¶ 22.)  In response, Ohio National informed Auxo Medical that it could use the cash value of the Policy to pay premiums through December 2009, and that the Policy would lapse at that time if no further premiums were paid.  (Losher Aff. at ¶ 18.)

According to the terms of the Policy, Auxo Medical was entitled to written notice and a grace period before cancellation.  (Def.'s Mot. Ex. 3 at 9, ECF No. 33-10.)  Specifically, the grace period term provides that "We will mail you, and any assignee of record, notice of the

---

[1] For all practical purposes in this case, the facts are viewed in the light most favorable to the Plaintiff, because the Court ultimately grants summary judgment in favor of the Defendant. It would be superfluous to engage in the complementary analysis of the facts in the light most favorable to the Defendant, where it prevails even with the facts viewed in the Plaintiff's favor.

[2] A "key man" life insurance policy refers to "[l]ife insurance taken out by a company on an essential or valuable employee, with the company as beneficiary."  Black's Law Dictionary 945 (8th ed. 1999).

amount due.  The contract will stay in force for 61 days after the due date of the required

premium, or, if later, *until 31 days after notice of the amount due has been mailed*, but not past

the maturity date."  (Id. (emphasis added).)  The Policy defines "notice" such that it "must be in

written form acceptable to [Ohio National].  A notice takes effect when signed; but it is subject

to any payment made or action taken by us before we receive it."  (Id. at 2.)

Between December 30, 2009 and March 1, 2010, Ohio National's automated computer

system generated three notices addressed to Auxo Medical at its undisputed location of 5401

Distributor Drive, Richmond, Virginia 23225.  (Def.'s Mot. at Exs. 14-16; Losher Aff. at ¶¶ 12-

27.)  Each notice was mailed consistent with Ohio National's procedures, and all automated

processes were in working order at the time.  (Losher Aff. at ¶¶ 27-30.)[3]  The first of the notices,

sent on December 30, 2009, states that the premium "has not been paid" and that the Policy "will

lapse if a payment of $257.00 is not received before February 25, 2010."  (Def.'s Mot. at Ex. 14.)

The next notice, issued on February 1, 2010, repeats verbatim the message contained in the

December 30th notice.  (Id. at Ex. 15.)  The final notice was issued on March 1, 2010, and

simply states that the Policy "has lapsed."  (Id. at Ex. 16.)

Although the insurance agent with whom Auxo Medical dealt received copies of each of

the notices, Auxo Medical denies receiving any of them.  (Transcript of the Dep. Testimony of

Lee Whitmore ("Whitmore Dep.") at 6:14-7:7, ECF No. 33-29.)   The insurance agent, one Lee

---

[3] Ohio National provides extensive details of its automated notice generation system, which the Court does not set forth herein.  It is sufficient that the record evidence establishes that the system was in working order at the time that it generated and recorded that it mailed the notices, and Auxo Medical proffers no evidence to the contrary.  At oral argument, counsel for Auxo Medical expressed his "suspicion" that more evidence existed, based on his personal experiences in the mailing industry.  However, no such evidence is in the record, the discovery period has long-since expired, and counsel's own opinion may not be considered in lieu of admissible evidence.  Thus, the only evidence before the Court establishes that the notices at issue were, in fact, mailed.

Whitmore ("Whitmore") never forwarded copies of the notices to Auxo Medical, or otherwise informed them that coverage lapsed at the time.  (Id.)[4]

Kevin Smith died on March 24, 2010.  (Transcript of the Dep. of Jay Crabtree ("Crabtree Dep.") at 58:14-22, ECF No. 42-1.)  Pursuant to the terms of the Policy, an insured must file a claim by submitting "due proof that that insured died while this contract was in force."  Soon after Smith's passing, Auxo Medical's President, Jay Crabtree ("Crabtree"), contacted Ohio National to submit a claim.  (Crabtree Dep. at 51:4-8.)  (Def.'s Mot. Ex. 3 at 1, 14.)  Relying on Ohio National's representation that the Policy had lapsed, Auxo Medical never filed a claim, submitted the death certificate, or completed a death claim form, as required by the terms of the Policy.  (Crabtree Dep. at 51:4-8.)

Based on these events, Auxo Medical brought this action in the Circuit Court for the City of Richmond, alleging breach of the insurance policy, violation of Va. Code § 38.2-232, negligence, breach of fiduciary duty, and seeking declaratory relief.  (Compl. ¶¶ 21-41, ECF No. 1-1.)  Ohio National removed the case to this Court pursuant to 28 U.S.C. § 1441(a) because the parties are completely diverse and the amount in controversy exceeds $75,000.00, vesting this Court with jurisdiction pursuant to 28 U.S.C. § 1332(a).  Having twice amended the pleadings, Auxo Medical's sole claim now before the Court is for breach of the insurance policy.  (Second

---

[4] Auxo Medical submits the transcript of the deposition testimony of an employee of the insurance agent, one Maria Smith, who testified that Whitmore often contacts his clients when an insurance policy lapses.  (Transcript of the Dep. Testimony of Maria Smith ("Smith Dep.") at 9:7-19, ECF No. 50-6.)  In a different vein, Ohio National points to Maria Smith's testimony to suggest that Auxo Medical received verbal notice of the lapse by virtue of a conversation between Maria Smith and her husband, Brian Smith.  (Def.'s Br. Sup. Mot. Sum. J. ("Def.'s Br.") at 13-14.)  Brian Smith serves as Auxo's Vice President and is the brother of the deceased, Kevin Smith.  (Id.)  For purposes of resolving the pending motions, the Court disregards the testimony of Maria Smith on both issues.  Because both the statutory requirements and the policy language require *written* notice, the *verbal* conversations involving Maria Smith, whatever their content or nature, have no bearing on the issue of proper notice.

Am. Compl. at ¶¶ 16-24.)  The parties filed cross motions for summary judgment following

extensive discovery.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is

appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The

relevant inquiry in a summary judgment analysis is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party must

prevail as a matter of law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986).

Summary judgment is particularly well-suited for resolution of insurance coverage disputes

because the construction of insurance contracts is a legal question.  St. Paul Fire & Marine Ins.

Co. v. Jacobson, 826 F. Supp. 155, 157 (E.D. Va. 1993), aff'd 48 F.3d 778 (4th Cir. 1995).

"When faced with cross-motions for summary judgment, the court must review each

motion separately on its own merits 'to determine whether either of the parties deserves

judgment as a matter of law.'"  Rossignol, 316 F.3d at 523 (quoting Philip Morris, Inc. v.

Harshbarger, 122 F.3d 58, 62 n.4 (1st Cir. 1997)).  "When considering each individual motion,

the court must take care to 'resolve all factual disputes and any competing, rational inferences in

the light most favorable' to the party opposing that motion."  Id. (quoting Wightman v.

Springfield Terminal Ry. Co., 100 F.3d 228, 230 (1st Cir. 1996)).

Furthermore, a "material fact" is a fact that might affect the outcome of a party's case.

Anderson, 477 U.S. at 247-48; JKC Holding Co. LLC v. Wash. Sports Ventures, Inc., 264 F.3d

459, 465 (4th Cir. 2001).  Whether a fact is considered to be "material" is determined by the

substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; see also Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001). Of course, the Court cannot weigh the evidence or make credibility determinations in its summary judgment analysis. Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).

## III. DISCUSSION

By virtue of the parties' debate over a number of immaterial facts, the cross motions for summary judgment have taken the appearance of a trial by legal memoranda. For example, Auxo Medical goes to great lengths to establish that it would have begun premium payments had it received actual notice. Such facts might be relevant where the issue of *receiving* notice to be tried by a fact finder. But such facts are immaterial on summary judgment where the sole issue is whether notice was *mailed*. For Ohio National's part, it attempts to address the merits of those arguments, noting that Auxo Medical's Operating Agreement would not have required a vote of the members in order to take action on the Policy. Again, the Court considers the facts related to the Operating Agreement to be immaterial to the resolution of the pending motions.[5]

As the Court perceives the issue, this case is much simpler than both parties have suggested in their submissions. In essence, three facts govern the entire resolution of this case. First, the undisputed record establishes that Ohio National mailed the proper notices of cancellation to Auxo Medical, such that if mailing the notices constitutes sufficient notice, then the Policy was no longer in effect. There exists a genuine dispute of fact regarding whether Auxo Medical ever received those notices. Thus, if actual receipt was required, then a fact finder

---

[5] The same can be said about numerous immaterial facts raised by both parties. Suffice it to say that if a fact is not explicitly discussed herein, the Court has concluded that it is immaterial.

must determine whether the Policy remained in effect.  Stated another way, the case turns entirely on what constitutes proper notice under the plain terms of the Policy and governing law.

Second, it is undisputed that Ohio National's notices were not signed by anyone.  Thus, the Court must construe the terms of the Policy to determine whether the notices needed to be signed by Ohio National in order to take effect.  Even then, the court must assess whether such an oversight would render the notices ineffective, or whether this is the type of technical omission that Virginia courts find immaterial where the notices are otherwise sufficient.

Finally, it is significant that Auxo Medical never initiated the proper claims procedure. Specifically, it never submitted a death certificate to Ohio National or otherwise submitted a claim.  If the Court determines that such a procedure is necessary to recover under the facts of this case, then the Court could arguably resolve the claim on this basis alone.  Accordingly, the Court begins its analysis here.

## A.      Auxo Medical's Failure to Submit Death Certificate and File Claim

In its Answer, Ohio National asserts as an affirmative defense that Auxo Medical failed to satisfy all conditions precedent to payment of a claim.  (Ans. to Second Am. Compl. at ¶ 28.) Of significance here, it is undisputed that Auxo Medical never submitted the requisite proof of death, which constitutes such a condition precedent to payment.  That, however, does not end the inquiry, as there exists a genuine issue of material fact concerning Ohio National's potential waiver of the condition precedent by its own conduct.

Under Virginia law,[6] where an insurance policy requires the insured to submit proof of a loss and file a claim, such a requirement is a condition precedent to coverage.  The Aetna Cas.

---

[6] As a federal court sitting in diversity, the Court must apply the choice of law rules of Virginia as the forum state. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1937).  In Virginia, "the law of the place where an insurance contract is written and delivered controls issues as to its

And Sur. Co. v. Harris, 239 S.E.2d 84, 88 (Va. 1977).  The insured must demonstrate "substantial compliance" with such conditions precedent in order to be entitled to coverage.  Erie Ins. Exchange v. Meeks, 288 S.E.2d 454, 456 (Va. 1982)  To that end, the burden of persuasion initially falls upon the insured to establish a *prima facie* case of substantial compliance with all conditions precedent.  Id.  In lieu of compliance, however, the insured may also demonstrate that the insurer has waived such compliance; for example, by denying the existence of coverage or refusing to process a claim.  Harris, 239 S.E.2d at 88.

The guidance articulated in Harris is instructive.  The principal communication between the parties concerning a loss in that case involved a letter sent to the insurer and the insurer's response.  Id. at 87.  That response stated simply:

> We are in receipt of your letter in regard to your recent fire loss.  We are very sorry that this loss to you has occurred.  It is most important that you contact us by telephone or in person as soon as possible so that we may talk with you in regard to this matter.

Id. at 85.  There was also an in-person meeting which created more confusion than assurance over the parties' rights and responsibilities.  Id. at 89.  The trial court instructed the jury that "if it found the statements and conduct of [the insurer] and its agents after the fire amounted to a denial of liability or a refusal to process the plaintiff's claim, it could find that Aetna had waived the condition of furnishing proof of loss."  Id. at 88.  Although the Supreme Court reversed, it did not take issue with the instruction.  Instead, the Court found that the communication between the parties was insufficient "evidence from which the jury could have found that the company waived any requirements under the policy."  Id.

---

coverage."  Buchanan v. Doe, 431 S.E.2d 289, 291 (Va. 1993).  Here, there is no dispute that the Policy was completed and delivered in Virginia, so Virginia substantive law applies.

At least for purposes of resolving the motions for summary judgment, there is sufficient evidence to create a genuine issue of material fact as to whether the initial communication between Auxo Medical and Ohio National "amounted to a denial of liability or a refusal to process the [] claim." Id. at 88. Viewed in the light most favorable to Auxo Medical, Crabtree's testimony establishes that he sent an email to Ohio National requesting to file a claim and he was immediately rebuffed. (Crabtree Dep. at 50:14-51:8.) From this, a jury could find that Ohio National's response to Crabtree's communication constituted the sort of waiver of a condition precedent that was unsupported in Harris. Id. at 88.

To the extent that Auxo Medical's failure to submit proof of death controls the outcome of the case, the issue would be one for the fact finder, and so summary judgment cannot be granted on this basis.

**B.      Notice of Cancellation**

Ultimately, the sufficiency of the cancellation notice governs the outcome of the cross motions for summary judgment. Three issues must be resolved to determine whether the notice was sufficient. First, it must be determined whether notice was proper according to the terms of the Policy. This requires the Court to assess the current state of Virginia law permitting comparable terms. Second, the Court must determine the impact, if any, of Virginia's statutory notice requirement. Finally, the Court must determine whether Ohio National's failure to sign the notice is of any import. The Court shall resolve these issues in turn.

**1.      Notice Was Effective When Mailed Pursuant to the Policy**

Ohio National's Policy incorporates the notice requirement in a term identified by the title "Grace Period." (Def.'s Mot. Ex. 3 at 9.) The "grace period" term explains that coverage will be lost if the premiums are not timely paid. However, it further explains that the Policy

9

"will stay in force for 61 days after the due date of the required premium, or, if later, until 31 days after *notice of the amount due has been mailed*." (Id. (emphasis added).)

In Virginia, an insurance policy is treated in the same manner as any other contract, and so the words used in the policy are given "their ordinary and usual meaning when they are susceptible of such construction." State Farm Fire and Cas. Co. v. Walton, 423 S.E.2d 188, 191 (Va. 1992) (citation omitted). If the terms are unambiguous, the court need not apply any other rules of construction. Virginia Farm Bureau Mut. Ins. Co. v. Hodges, 385 S.E.2d 612, 614 (Va. 1989). However, if the language is ambiguous, "[t]he rule of construction consistently applied in [Virginia] is that ambiguous language in insurance policies must be interpreted most strongly against the scrivener and in favor of the insured." Cuna Mut. Ins. Soc'y v. Norman, 375 S.E.2d 724, 725 (Va. 1989) (citations omitted).

As a general rule, "[i]n the absence of a stipulation to the contrary, the act of cancelling a contract of insurance which provides for cancellation on notice necessarily includes the element of delivery of the notice." 10A M.J., Insurance, § 27. However, "it is not necessary to prove actual receipt of the cancellation of notice. If the notice is mailed in accordance *with the terms of the policy* and the provisions of the statute the notice of cancellation is effective." Ampy v. Metropolitan Cas. Ins. Co. of New York, 105 S.E.2d 839, 844 (Va. 1958) (emphasis added). Thus, it is an exception to this rule that "the parties to an insurance policy can contract away the element of delivery." 10A M.J., Insurance, § 27. See also Riddick v. State Capital Ins. Co., 271 F.2d 641, 642-43 (4th Cir. 1959); Ampy, 105 S.E.2d at 844.

In Wright v. Grain Dealers Nat. Mut. Fire Ins. Co., the Fourth Circuit, the appellate authority governing this jurisdiction, applied Virginia law to an insurance policy term similar to that in this case. 186 F.2d 956 (4th Cir. 1950). The language at issue in that case provided that

the policy "may be canceled by the [insurer] by mailing to the insured at the address shown in this policy written notice stating when not less than five days thereafter such cancellation shall be effective.  The mailing of notice as aforesaid shall be sufficient proof of notice."  <u>Id.</u> at 957-58.  Interpreting this term, the Fourth Circuit found that "under the terms of the policy contract failure to receive the notice has no bearing on the case since it was specifically agreed that the mailing should constitute proof of notice.  To hold otherwise would, in effect, be undertaking to change the terms of the contract to provide that notice must be received rather than mailed."  <u>Id.</u> at 958.  The court went on to explain:

> There are many cases, where actual notice is a prerequisite of effective cancellation, in which it is held that the presumption of the receipt of notice arising from the mailing thereof may be rebutted by testimony of the policy holder that the notice was not received; and when this occurs, the question is for the jury.  It has also been held in some cases that a jury question arises under like circumstances where mere mailing of the notice under the policy is sufficient to effect a cancellation.  We think, however, that the conclusion reached by us in [a prior case] is sound; and that *when the determining factor is mailing rather than receipt of notice, such undisputed and convincing evidence of mailing as is found in this case is not rebutted merely by evidence that the notice was not actually received.*

<u>Id.</u> at 960 (emphasis added) (citations omitted).  <u>Accord</u> <u>Riddick v. State Capital Ins. Co.</u>, 271 F.2d 641, 642-43 (4th Cir. 1959).  Thus, the general rule in Virginia is that actual receipt of the notice must be proven, but an exception to this rule exists where the parties agree that mailing notice is sufficient.  Stated another way, the insurer must prove actual receipt of notice *unless* the parties have agreed otherwise by the policy's express terms.

Here, the policy language at issue is similar to the term construed in <u>Herndon v. Mass. Gen. Life Ins. Co.</u>, which provided simply that "[n]otice will be mailed to the last known addresses of the owner and to any assignee of record."  28 F. Supp. 2d 379, 382 (W.D. Va. 1998) (applying Virginia law).  By the plain language of the "grace period" term in Ohio National's

Policy, cancellation occurs thirty one (31) days after the notice has been deposited in the mail. The court in <u>Herndon</u> concluded that such policy language "requires only that notice be mailed by [the insurer]. There is no requirement that the notice actually be received to be effective." <u>Id.</u> at 383. Finding for the insurer, the court noted that "Virginia courts have consistently upheld policy provisions that require only mailing of notice as opposed to receipt, holding that the insured has contracted for and assumed the risk of non-receipt." <u>Id.</u> (citations omitted).

For purposes of resolving Ohio National's Motion for Summary Judgment, the Court accepts as true Auxo Medical's evidence that it did not receive the notices of cancellation.[7] However, where the parties have contracted for mere mailing as sufficient notice, such evidence is irrelevant. <u>Wright</u>, 186 F.2d at 958. Contrary to Auxo Medical's position, the undisputed record establishes that Ohio National did, indeed, mail the notice. Thus, Auxo Medical's Motion for Summary Judgment shall be denied, and Ohio National's Motion for Summary Judgment shall be granted on this basis.

### 2.    Notice Satisfied Statutory Requirement

Were the issue limited solely to whether Ohio National complied with the Policy, the inquiry would end there. However, as this Court recognized in its Memorandum Opinion resolving the motion to dismiss, we must also consider Virginia's statutory notice requirement, set forth at Va. Code § 38.2-232. (Mem. Op. at 6-7 (July 6, 2011), ECF No. 24.) Although the

---

[7] At oral argument, Auxo Medical emphasized the burden-shifting framework that applies when *receipt* must be proven. However, Virginia courts do not apply such analysis when the only question is whether notice was *mailed*. This is because "[t]he presumption that a properly mailed letter will reach the addressee, well-settled in Virginia law, does not work in reverse. Failure to receive a letter does not create a presumption that it was never mailed." <u>Herndon</u>, 28 F. Supp. 2d at 384 (citing <u>Wright</u>, 186 F.2d at 958 (holding that failure to receive letter does not raise presumption that letter was not mailed, and in any event such evidence is irrelevant when policy calls only for mailing)). Because the issue here is whether the notice was mailed, the burden-shifting framework has no bearing on the issue now before the Court.

statute does not create a separate cause of action, it is has been recognized in Virginia that statutory notice requirements may be incorporated into the terms of an insurance policy, but only to the extent that the policy conflicts with the statute.  See Villwock, 468 S.E.2d at 133 n.3 ("Where, as here, the policy provisions *conflict with the applicable statute*, the statute controls") (emphasis added).

Based upon the authorities discussed *supra* at Section III(B)(1), it is clear that, when construing insurance policies in Virginia, there is interplay between the common law, the policy language, and any applicable statutory requirements.  As the Supreme Court of Virginia has explained:

> There is a conflict of authority on the question of whether a notice of cancellation sent by the insurer by mail must be received before it can become effective.  This conflict has arisen out of a *variation of facts and the provisions of the policy or statutes* dealing with the giving of notice of cancellation.  29 Am. Jur. § 285. See Anno. 123 A.L.R. 1008; 26 Va. L. Rev. 224.
>
> Under the rule laid down by this Court in Wolonter v. United States Cas. Co., 101 S.E. 58, 61 (Va. 1919), it is not necessary to prove actual receipt of the cancellation of notice.  *If the notice is mailed in accordance with the terms of the policy and the provisions of the statute* the notice of cancellation is effective. . .

Ampy, 105 S.E.2d at 844 (emphasis added).

From these cases, it is clear that Virginia's common law of contracts recognizes the parties' right to define the notice requirements by contract, regardless of the generally applicable rules.  But the Court acknowledges that most of these decisions predate the passage of Va. Code § 38.2-232, which was enacted by the General Assembly in 1991.  Thus, if the statute conflicts with the general common law rule, and policy terms providing for notice upon mailing, then it is possible that these precedents have been overruled by statute.  The Court must therefore assess: 1) whether the statute conflicts with the common law rule, and 2) whether the statute conflicts with the relevant policy language.

When enacting legislation, Virginia's General Assembly "is presumed to have known and to have had the common law in mind," so as to preserve common law rules "unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." Jenkins v. Mehra, 704 S.E.2d 577, 581 (Va. 2011) (citations and internal quotation marks omitted). "Abrogation of the common law thus occurs only when 'the legislative intent to do so is plainly manifested,' as 'there is a presumption that no change was intended.'" Id. (citing Isbell v. Commercial Inv. Assocs., Inc., 644 S.E.2d 72, 75 (Va. 2007)).

Generally, federal courts ought to tread lightly when interpreting state statutes, carefully construing state laws "from the perspective of the highest state court, rather than from the court's own perspective." Compton v. Nationwide Mut. Ins. Co., 480 F. Supp. 1254, 1256 (W.D. Va. 1979) (citing Kline v. Wheels by Kinney, Inc., 464 F.2d 184 (4th Cir. 1972)). Where no guidance exists from the Supreme Court of Virginia, decisions from the Commonwealth's lower courts must be given due consideration. Id. (citing Commissioner v. Estate of Bosch, 387 U.S. 456, 465 (1967)).

With such guidance in mind, the Court recognizes that at least one Virginia Circuit Court decision has applied the rule that a policy may provide for notice upon mailing since passage of Va. Code § 38.2-232 in 1991. In Brant v. Parsio, the court ruled that if the cancellation provisions state that the insurer may cancel by mailing notice, then "upon compliance with the mailing provisions, cancellation (or refusal to renew) is completed, whether the insured actually receives the notice or not." 27 Va. Cir. 339, 350 (1999) (citing Ampy v. Metropolitan Caualty Ins. Co. of New York, 105 S.E.2d 839, 843 (Va. 1958); Riddick v. State Capital Ins. Co., 271 F.2d 641 (4th Cir. 1959)). Although the Court did not address Va. Code § 38.2-232 directly, the opinion suggests that Virginia courts continue to apply the rule from cases such as Ampy and

14

<u>Riddick</u>.  As a federal court sitting in diversity, this Court is bound to give proper regard to such decisions.

Moreover, there is nothing in the statute manifestly in conflict with the common law rule, or otherwise suggesting that the General Assembly intended to abrogate precedent.[8]  The statutory notice requirement is silent as to whether notice is effective upon dispatch, or whether proof of actual receipt is necessary.  Indeed, the statute says nothing about whether notice is sufficient if dispatched, or whether the insurer must secure proof of receipt.  Rather, it appears that the statute sets forth the circumstances that require notice of cancellation and a minimum level of content.

The only case to have applied the statutory requirements at issue is <u>Russell v. Nationwide Ins. Co.</u>, No. 4:07cv130, 2008 U.S. Dist. LEXIS 93186 (E.D. Va. Nov. 17, 2008), <u>Aff'd</u> 401 Fed. App'x 763 (4th Cir. 2010).  In that case, the court held that Va. Code § 38.2-232 imposes two elements that must be present in a satisfactory notice: 1) it must inform the insured that a payment has been missed; and 2) it must provide a date certain on which the policy will lapse. <u>Id.</u> at *23.  The court further held that the insurer must prove actual receipt of the notice.  <u>Id.</u> at *25-26.  Notably, however, the policy in <u>Russell</u> did not contain any term providing that notice was effective upon mailing.[9]

---

[8]  Although legislative history is not controlling, the Court notes that it has searched the legislative record and can find no indication that the General Assembly intended to modify the common law governing the parties' right to contract for notice upon mailing.

[9]  In affirming the district court, the Fourth Circuit held that "[w]hen, as here, the applicable statute requires notice prior to cancellation but 'does not specify mailing as the method of providing notice,' an insurance company must prove *actual receipt* of notice, as opposed to proving merely that notice was mailed in the manner required by statute."  <u>Russell</u>, 401 Fed. App'x at 768 (emphasis in original) (citing <u>Villwock v. Ins. Co. of N. Am./CIGNA</u>, 468 S.E.2d 130, 131 (Va. App. 1996)).  The Fourth Circuit did not address whether the statute would conflict with a policy term providing for mailing as the method of providing notice, or whether the statute abrogates Virginia's long-standing common law rule that the parties can

Here, the notice that Ohio National mailed to Auxo Medical on December 30, 2009 satisfied both elements of Va. Code § 38.2-232.  It informed Auxo Medical that a premium payment had not been paid, thus satisfying the first requirement.[10]  It also provided a date certain on which coverage would lapse -- February 25, 2010 -- thus satisfying the second element required by the statute.  Accordingly, as a matter of law, Ohio National complied with Virginia's statutory notice requirements.[11]

A cursory review of the case of <u>Villwock v. Ins. Co. of N. Am./CIGNA</u> might appear to counsel a different result.  468 S.E.2d 130, 131 (Va. App. 1996).  Upon careful examination, however, the Court is satisfied that <u>Villwock</u> is distinguishable from the case here, and that its holding is not so broad as to foreclose parties from agreeing to accept notice as sufficient upon mailing.  First, the court in <u>Villwock</u> was presented with a statutory notice requirement peculiar to workers' compensation insurance.[12]  Second, unlike the case now before the Court, and

---

contract to accept notice upon mailing.

[10] Ohio National has identified a number of other instances in which it informed Auxo Medical that the policy *would lapse* in the future if payments were not later made.  (<u>See</u>, <u>e.g.</u>, Def.'s Br. Sup. Mot. Sum. J. ("Def.'s Br.") at 2.)  However, because these instances occurred *before* any payment was missed, they would not be effective pursuant to Va. Code. § 38.2-232.  <u>Russell</u>, 2008 U.S. Dist. LEXIS 93186, at * 23.  Thus, the Court does not consider any notices material to the resolution of the pending motions except for those occurring once Auxo Medical failed to make a premium payment.  <u>Anderson</u>, 477 U.S. at 247-48 (defining "material facts" as only those facts which affect the outcome based on the substantive law).

[11] Ohio National has gone to great lengths to argue that its Policy falls within two of the three exceptions set forth at Va. Code § 38.2-232.  It admits that such an argument would require this Court to render an opinion in conflict with the holding in <u>Russell</u>, 2008 U.S. Dist. 93186, at *19-23.  But because the Court has concluded that the statutory requirements were clearly satisfied in this case, it need not consider the exceptions.

[12] The Court does not suggest that the statutory framework addressed in <u>Villwock</u> cannot be analogized to the statute at issue here, Va. Code § 38.2-232.  Rather, the Court merely notes that the holding in that case is not generally applicable to all such statutes, and must be considered in the context of the policy language.  If such language is not inconsistent with applicable statutes, then the policy language controls.  <u>Villwock</u>, 468 S.E.2d at 133 n.3 ("Where, as here, the policy provisions *conflict with the applicable statute*, the statute controls") (emphasis added).

16

similar to <u>Russell</u>, there was no policy language providing that notice was effective upon mailing.  Thus, the parties in <u>Villwock</u> could not be said to have "contracted for and assumed the risk of non-receipt."  <u>Herndon</u>, 28 F. Supp. 2d at 383 (citations omitted).  Accordingly, the court applied the general rule in that case, requiring the insurer to prove actual receipt of notice. <u>Villwock</u>, 468 S.E.2d at 134 n.4.  The case is therefore highly distinguishable from cases such as this, where the parties have contracted otherwise.

Thus, the Court applies the rule that, when the parties have agreed that mailing a notice is sufficient, proof of receipt is not necessary.  Courts applying this rule generally conclude that "whether the mailing of the cancellation notice complied with the requirement of the policy [is] one of law which should [be] decided by the court, rather than a jury."  <u>Riddick</u>, 271 F.2d at 642. Based upon the undisputed facts here, the issue is well-situated for dispositive relief.

In this case, viewing the undisputed record in the light most favorable to Auxo Medical, the evidence shows that Ohio National mailed a properly addressed notice to Auxo Medical, but that Auxo Medical never received it.  This latter fact being immaterial, <u>see</u> <u>Wright</u>, 186 F.2d at 960, *supra*, the Court concludes that summary judgment should be granted in favor of Ohio National on this basis.

### 3.      Failure to Sign the Notice Does not Render Notice Ineffective

Auxo Medical also argues that the notices are defective because they were not signed. Though it is true that the Policy provides that notice "takes effect when signed," this is exactly the sort of technical mishap that will not hinder an otherwise effective notice of cancellation. "[T]he view generally taken is that any notice otherwise sufficient in form, which clearly conveys to the insured notice of cancellation, is effective after lapse of the full time stipulated by the policy."  <u>State Farm Mut. Auto. Ins. Co. v. Pederson</u>, 41 S.E.2d 64, 68 (Va. 1947).  Such

"extremely technical" requirements as a physical signature will not generally render the notice ineffective. Id.

As already explained, *supra* at Sections III(B)(1)-(2), the notice satisfied the substantive requirements of Va. Code § 38.2-232 and the Policy. Its content "convey[ed] to the insured notice of cancellation." Pederson, 41 S.E.2d at 68. Any oversight in signing the notice will not prevent it from having the legal effect of terminating insurance coverage. Accordingly, Auxo Medical's Motion for Summary Judgment will be denied on this basis.

## C.     Agency Claims Fail as a Matter of Law

With the Court's leave, Auxo Medical has supplemented its claim to allege that Ohio National "is vicariously liable . . . for the acts of its agent [Whitmore], and other employees, for not ensuring that Auxo [Medical] received notice." However, the Court agrees with Ohio National that there is no legal basis to hold it liable for Whitmore's failure to notify Auxo Medical of the lapse in coverage.

In Virginia, it is well-established that insurance agents have broad powers to bind insurance companies. "The insurance agent, within the general scope of the business he transacts is *pro hac vice* the insurance company. What he knows they know. What he does they do. He has power to bind and to loose, and no limitation of his power unknown to strangers will bind them." Ampy, 105 S.E.2d at 845 (citing Virginia Auto Mut. Ins. Co. v. Brillhart, 46 S.E.2d 377, 381 (Va. 1948); Royal Indemnity Co. v. Hook, 157 S.E. 414, 417 (Va. 1931); Coles v. Jefferson Ins. Co., 23 S.E. 732, 733 (W. Va. 1895)). Thus, a cancellation notice sent by an insurance agent *can* be effective cancellation. Id. (emphasis added). Such a rule does not necessarily work in reverse. Although an agent *may* bind the insurer by sending notice, the agent's failure to do so will not necessarily bind the insurer who otherwise provides the requisite notice.

The notice provisions of the Policy required only that Ohio National mail notice to Auxo Medical.  Those provisions do not require that it do so directly, or by and through its agent.  Nor does the policy forbid Ohio National from taking action through its agent.  It could have sub-contracted its own responsibility to provide notice to another person or entity, such as its agent, and it would then be liable for such a failure.  But here, the record establishes that Ohio National retained the responsibility for mailing notice to its customers, and did so in this case.  Any further notices would have been superfluous.  Because the Policy did not require duplicative issuance of the required written, mailed notice, it was sufficient that Ohio National, itself, deposited the notices in the mail.  Thus, the failure of its agent to mail duplicate notices has no bearing on the resolution of the cross-motions for summary judgment.

## IV. CONCLUSION

For the reasons set forth herein, the Plaintiff's Motion for Summary Judgment (ECF No. 28) shall be DENIED, the Defendant's Motion for Summary Judgment (ECF No. 32) shall be GRANTED, and the Defendant's Supplemental Motion for Summary Judgment (ECF No. 49) shall be DENIED AS MOOT.

An appropriate Order shall issue.

_____/s/_____
Dennis W. Dohnal
United States Magistrate Judge

Richmond, Virginia
Dated: November 15, 2011